## FRIEDL v LACKMAN

Ohio Appeals, 1st Dist, Hamilton Co

No 5512. Decided January 30, 1939

Joseph H. Woeste, Cincinnati, for appellee.

Robert A. Black, Cincinnati, for appellant.

## OPINION

By ROSS, PJ.

Appeal on questions of law from the Court of Common Pleas of Hamilton county.

The plaintiff brought an action jointly against the owner and lessee of a building. She alleged that she was injured when a piece of glass, falling out of a window on the 6th floor of the building, struck her while a pedestrian on the sidewalk.

It is stated in the petition that the pane of glass was five by four feet in size and was three-eighths of an inch thick. It is further alleged in the petition that the owner knew or should have known that the window from which the glass fell was in a dangerous and unsafe condition, and was in such condition when the tenant took over the property.

Further allegations are to the effect that the owner and tenant permitted such dangerous condition to remain and continue until the sash fell causing the glass to break and fall upon the plaintiff.

(1) The petition contains allegations charging a joint tort upon the part of the owner and tenant. It was, therefore, not demurrable, for misjoinder. **Bucurenciu v Ramba 117 Oh St, 546, 550; Maloney v Callahan, 127 Oh St, 387, 396.**

That an owner and tenant may be jointly liable for the maintenance of a dangerous condition will appear from the authorities hereinafter noted.

(2) Motion to strike from the petition the words charging liability upon the owner for mere negligence was overruled. The allegation is that the dangerous condition was known to the owner, "or by the exercise of ordinary and reasonable diligence should have been known to him."

It is the contention of the owner that an owner out of possession is not liable for a dangerous condition after the premises have been transferred to a tenant unless such owner had actual knowledge of such menace to the public.

It is obvious that the liability of the owner, out of possession of premises, to a stranger to both owner and tenant, injured by a defective condition of the premises must be based upon liability in tort and cannot be predicated upon any contractual relation existing between the owner and tenant.

It is specifically alleged in the petition that the tenant was in possession of the premises in question.

The rule as to invitees when the owner is out of possession is stated in sections 355, 356, 357, and 358 Restatement of the Law of Torts. Liability is placed upon the owner for injury to such persons where there is a covenant to repair or where the owner knows of a defect and conceals the same from the tenant.

Is there a greater liability to a stranger than to an invitee of the tenant? The stranger's claim must be wholly based upon tort liability. It must be based, in other words upon a failure of duty to the stranger. It is alleged that the owner here permitted a dangerously unsafe window, containing a glass 5x4 feet and ⅜ inch thick, upon the sixth floor of a building, above the street, to pass out of the owner's possession into that of a tenant.

Is the owner, after transfer of possession, liable to a stranger for a defect in the supporting appliances of such a window, of which defect the owner was ignorant, but which defect could have been discerned with reasonable dilligence?

The answer is, that he is liable to such stranger.

In Restatement of Torts, section 379, page 1013, it is stated:

"A lessor of land who transfers the possession thereof in a condition which he realizes or should realize as involving unreasonable risk of bodily harm to others outside the land, is subject to the same liability for bodily harm subsequently caused to them thereby as though he had remained in possession.

(b) Effect of lessor's liability on lessee's liability. Although the lessor is liable for any harm done while the land is in the possession of his lessee by any dangerous condition existing when possession of the land is given to the lessee, his liability does not destroy that of the lessee, as possessor, under the rules stated in sections 364 to 370. A person injured by such a condition may recover against either the lessor or the lessee.

(e) When land safe at time of lease. The liability stated in this section attaches only to one who leases land in a dangerous condition. It does not apply to a lessor who

turns over the land in safe condition to a lessee under a lease which by its terms continues of its own force unless notice of termination is given, and who, knowing that the land has fallen into a dangerous condition, fails to terminate the lease."

The pedestrian upon the sidewalk is invested with a right to proceed thereupon without injury to his person from the maintenance of abutting buildings or the use of abutting property.

The owner by his failure to use reasonable diligence permitted a window to become and remain defective and to become and continue a menace to the safety of the pedestrian. Had injury occurred while the owner was still in possession, there can be no contention that the owner would not be compelled to respond in tort to the pedestrian. The owner cannot as far as the stranger-pedestrian is concerned, divest himself of a responsibility thus existing merely by a transfer of possession. There is a continuing potential wrong toward the public—a menace to its safety still exists. A nuisance is permitted to continue. The possible negligence of the tenant merely adds an additional respondent for damages to the innocent passerby.

Any other rule would produce a species of injustice not tolerated by a just regard for the interests of the public at large.

The invitee of the tenant is in an entirely different status from the stranger passing by, who has no intention or desire to enter the premises. See: section 589 in 16 R. C. L., p. 1069.

The rule that there is responsibility upon the owner where the premises are leased for purposes known by the owner to involve the presence of the public such as is the case in the use of wharves, piers, hotels, theatres, is sufficient in itself to justify the extension of liability for injuries to the public which may be reasonably anticipated will be exposed to the menace in question, though not actually on the premises. The rule of liability is recognized in **Shindelbeck v Moon**, 32 Oh St 264, the syllabus of which is:

"A landlord who has demised property, parting with possession and control thereof to a tenant in occupation, is not responsible for injuries arising from defective condition of such premises, when that defect arises during the continuance of the lease.

Upon leased premises, a water-pipe and gutter, not defective in their original construction, became stopped up, so that water flowed upon the door steps of the leased house, forming ice, upon which plaintiff fell and was injured. As between lessor and lessee, in the absence of contract to the contrary, it is the duty of the latter to repair the pipe, or remove the ice and for failure in this he is liable, and not the landlord.

If the defective condition of leased premises occasions damage, in order to make the lessor or landlord responsible, it is not sufficient merely to allege ownership in him, but the special circumstances creating his liability, must be averred."

See also: Harris v Lewistown Trust Co., et, 326 Pa. 145, 110 A. L. R., 749, at 755. See: Review in 84 Pa. Law Rev. Vol. 84, pages 471, 472.

Enough has been said and noted to indicate that it is immaterial as to strangers whether the owner knew or should have known at the time of leasing, that the premises were in disrepair. The motion to strike was, therefore, properly overruled.

(3) A motion was made to require plaintiff to elect whether to proceed against the owner or tenant. This motion was also properly overruled. What has been said supports this conclusion.

(4) A motion was made for an instructed verdict for the owner at the close of the plaintiff's case and at the close of all of the evidence.

The answer of the owner contained, admissions of the ownership of the property, the tenancy of the co-defendant, the injury to the plaintiff. It contained denials of a defective or dangerous condition, or knowledge of any defect in the premises at the time possession was given the tenant.

The owner alleged in the answer that the premises in question were leased to the co-defendant-tenant, and that by the terms of the lease the tenant was to make all interior repairs, including window glass.

The answer specifically denied he was in possession or control of such portion of the premises as caused the injury to plaintiff.

The tenant filed an answer in which he admitted possession under a lease from his

co-defendant, the owner. The tenant alleged that the lease provided that the owner was required to keep the outside of the building in repair and that the tenant was required to keep the inside, including glass, in repair. It was further alleged that the proximate cause of the injury to plaintiff was the breaking of a window sash cord without the fault of the tenant.

The reply of the plaintiff to the answer of the owner contains admissions that the tenant undertook by virtue of the terms of the lease to keep the interior of the premises, including window glass, in repair.

The plaintiff denied all other allegations.

In the plaintiff's reply to the answer of the tenant, the plaintiff admits the terms of the lease as to repairs and also that the cause of the plaintiff's injuries was the breaking of a defective sash cord. Otherwise, the reply was a general denial of the new matter set up by the tenant in his answer. The evidence developed that the plaintiff while proceeding along the sidewalk of one of the most traveled thoroughfares in the city of Cincinnati was struck upon the head by glass falling from a window on the sixth floor of a building owned by one defendant and leased to the other—that the upper sash of the window in question dropped by reason of one of the sash cords or ropes giving way—that it crushed the window sill—that no one was near the window at the time it fell—that the fall caused the glass to break and fall outward down to the sidewalk, where a piece of it struck the plaintiff while she was proceeding along the sidewalk—that the pane of glass weighed about 86 pounds and was of a heavy plate—that the rope, ⅜ inches in diameter, showed evidence of being worn and frayed at a part where it passed over the pulley—that it was the type of rope usually used at the time of its installation for windows of the kind in question.

The agent of the building was called, who stated he had charge of minor repairs since 1928. That he remembered the building for thirty odd years. (The trial was had in April, 1938). The witness stated that he had caused no repairs to be made during his service as agent. The mishap occurred on April 6, 1936. The tenant in possession at that time entered upon the premises in April, 1934. The agent further testified that he had caused no inspections to be made from 1928 to 1936, nor had he inspected the sash cords of the windows. Some windows were equipped with reinforcing rods. The window in question was not so equipped. In some of the windows the wood had parted from the glass, due to strain on the bottom of the sash. The windows were of different weights. The type of rope in question is considered by the manufacturer to be serviceable for twenty-five years, normal use. The rope would fail six months to a year after it started to fray. There are twenty or thirty reasons causing a sash cord to fray. A witness for plaintiff testified some "ten years ago" in 1928, he went all over the windows in the front of the building and put in new cords where necessary. Another witness stated, in his opinion, the rope in question was fifteen years old, and the rope being worn for some fourteen inches, that such worn and frayed condition had existed for five or six years, basing his conclusion on the extent to which dirt had worked into the rope, that such a rope if new should last for ten or twelve years. This witness further stated that the rope, if inspected in 1930, six years before it broke, would have appeared uniform throughout its length.

There was evidence that the window in question was seldom, if ever, lowered or raised during the two years in which the tenant-defendant occupied the premises before the injury to plaintiff.

There is also evidence that the break in the rope was caused by wear, and that during the two years occupancy of the last tenant, co-defendant in this case, the sash of the window in question was seldom lowered.

In **Berkowitz v Winston, 128 Oh St, 611,** it is held that occupation and control are not reserved by an agreement to make repairs. This rule appears in the syllabus of the case. While the Berkowitz case dealt with an employee of a lessee, the rule as to inference from a contract to repair is the same as to a stranger who has no privity with such contract.

The pleadings and the evidence noted in the instant case presented to the jury the question of whether or not at the time the tenant took possession of the premises, both inside and outside of the entire building, there existed a situation amounting to a nuisance, of which the owner knew, or should have known. If ▮▮▮▮ the existence of such a situation at such time was shown by a preponderance of the evidence, and such condition was the proximate cause of plaintiff's injuries, then she is entitled to

recover against the owner. On the other hand, if the tenant knew of such situation or condition, or in the exercise of reasonable prudence and diligence should have known of such situation and condition, and failed to correct the same, and such condition was the proximate cause of plaintiff's injuries, then the plaintiff may recover against the tenant. And, further, there was a common duty to remove any situation in the premises which constituted a menace to the public. Neither owner nor tenant may hide behind any contract existing between them as far as an innocent member of the public is concerned, when such person is not upon the premises at the time of injury. Both owner and tenant are, therefore, jointly liable for injuries resulting from a failure to perform a common duty to remove a menace to the safety of strangers. Neither may contract to relieve himself of this obligation, any more than he can contract to relieve himself of a duty imposed by law. **Doster v Murr, 57 Oh Ap, 157.**

It is our conclusion that the evidence noted heretofore, although not as strong as could be desired, is sufficient to justify its submission to a jury.

(5) Complaint is made as to certain rulings upon the admission and rejection of evidence. The plaintiff was permitted to introduce evidence tending to show that the owner had replaced the broken rope with a chain, and had in like manner repaired other windows in the building after the injuries to plaintiff.

Under any view of the liability of the owner, this evidence was immaterial. It only tended to show what construction the owner placed upon the contract of lease. It had no bearing upon the question of whether a nuisance existed at the time the owner relinquished control of the premises to the tenant. Of course if the owner still retained control of the premises, an additional basis for liability would exist. As we have before noted, however, the language of the lease failing to contain a reservation of the right to enter and inspect under the Berkowitz case, supra, the mere contract to repair was unavailing to establish the continued existence of possession and control in the owner. There was no dispute being litigated between the tenant and the owner. This evidence, therefore, was inadmissible upon any hypothesis.

It was also prejudicial to the defendant-owner, as its immateriality would not be appreciated by the jury, especially as it was made the subject of comment by the court in its charge and in the special instructions. The court, therefore, committed prejudicial error in admitting such evidence.

The court also excluded evidence offered by the owner tending to prove that the employees of the owner were required to make an inspection and report of defective appliances and had made no report. Such evidence was also immaterial and was properly excluded.

(6) The owner claims error in the giving of plaintiff's charge No. 1.

In this charge, the court told the jury that as a matter of law the windows with the exception of the glass were a part of the outside of the building and the owner was bound to keep the same in repair. Such was the provision of the lease. The charge was a correct statement of the proper construction of the lease, but irrelevant to any proper issue, in view of the pleadings and the evidence. It had no place in the case, and was, therefore, a charge upon an issue not in the case and erroneous.

The court also gave the defendant-tenant's special charge No. 1, to the effect that the sash cords were a part of the exterior of the building, that it was the duty of the owner to repair same and that the tenant was not obligated to repair same. This charge, in our view of the matter, was incorrect, as it was the tenant's joint duty to remove the nuisance and to use reasonable diligence in ascertaining the existence of the same. The rule is stated in Restatement of the Law of Torts, p. 991. Here, again it must be remembered that the contract to repair is not sufficient to exclude control and possession by the tenant. The jury might well have found that an exercise of due care upon the part of the tenant required that the tenant should make inspection of the fastenings of this 86 pound plate glass window, six stories above the street, to see that it was so secured as not to cause injury to pedestrian using the sidewalk below.

The giving of such charge was erroneous, but the plaintiff has taken no appeal and we pass the error involved.

Special charge No. 1 requested by the owner was refused. The effect of this charge was to advise the jury that notwithstanding an agreement to make repairs the owner was out of control of the premises.

Again, such charge is wholly irrelevant to the issues in the case.

Defendant-owner's special charge No. 2 related to the effect of evidence showing alterations or repairs after the injury to plaintiff. To susbstantially the same effect are special charges Nos. 3 and 4, requested by the owner. The court gave special charge No. 4. As before stated, such evidence was improperly admitted and was irrelevant to any proper issue in the case. The defendant-owner was entitled to a charge excluding the evidence from the consideration of the jury. The charges in question were directed to such purpose, but were only partially effective. The giving of these charges would not have affected the ultimate disposition of the case, for the reason that the real issues thereon were not presented to the jury. The error involved in the refusal to give the charges is thus involved in the general aspect of the case. Had these been given, it would not have cured the error otherwise present. Certainly, the owner was entitled to whatever effect the charges might have had to lessen the effect of the erroneously admitted evidence.

The general charge is first attacked on the ground it failed to contain a statement of the issues involved. This is required by the ruling in **Simko v Miller**, 133 Oh St, 345, 358.

The function of the jury is to determine issues of fact and apply the law as given by the court to its conclusions thereon in reaching a general verdict. It is apparent, therefore, that the duty of clearly and concisely presenting such issues is no perfunctory task.

The issues involved in this case included among others the following:

(1) At the time the premises were transferred by the owner to the tenant, did there exist therein a nuisance to the safety of pedestrians using the sidewalks abutting upon the premises, which, if not removed, might reasonably be expected to cause injury to such persons so using the sidewalk? (2) Did the owner know of the existence of such menace? (3) If he did not know of it, could he, exercising the care which a reasonably prudent person is accustomed to use under the same or similar circumstances, have discerned its existence? (4) Did the tenant know of the existence of such menace? (5) If he was unaware of its existence, did he use the care which a reasonably prudent person is accustomed to use under the same or similar circumstances to discern the existence of such menace to the safety of pedestrians using the abutting sidewalks?

There is no dispute that the falling glass caused the injuries to plaintiff, and there is no dispute that the glass was caused to fall by the breaking of a sash cord in the window. And there can be no dispute but that the sash cord failed to serve the purpose of such cords.

We fail to find in the charge that the issues were presented to the jury. In failing to present them, the court committed error, prejudicial to the defendant-owner, as well as the other parties in the case.

The court in its charge affirmatively predicated the right of the plaintiff to recover upon the element of control. As we have previously indicated, this is not the issue presented by the pleadings and evidence in this case. There was no relevant evidence that possession and control were retained by the owner over the defective appliances. The language used in the lease was ineffective to accomplish this result. The only evidence properly admitted tended to prove the existence of a nuisance at the time of transfer of tenancy and a failure to abate such nuisance by both owner and tenant. It was for the jury to say whether or not the evidence was sufficiently strong to preponderate these issues in favor of the plaintiff.

For these reasons, the judgment of the court of common pleas in favor of the plaintiff against the defendant, Lackman, the owner, must be reversed, and as to him the case is remanded for a new trial.

No motion for a new trial or notice of appeal having been filed as to the defendant-tenant, Schutte, the judgment in his favor is affirmed.

MATTHEWS, J, concurs.

**HAMILTON, J, DISSENTING:**

I dissent in this case, for the reason that the errors discussed in the majority opinion in no wise prejudiced the defendant owner, in view of the law as found in the opinion that there was a duty owing to the public, broader than any contractual duty arising out of the lease toward the tenant or an invitee. The main ground of error found is the admission of evidence concerning repairs made by the owner, and

the charge of the court as to whose duty it was to make the repairs. Since this could but perhaps place an added duty toward plaintiff, it would be within the broader rule of duty owing to the public, and, therefore, to the plaintiff. I, therefore, fail to see any prejudicial error in this case.